**In re: the Application of: TEXAS KEYSTONE INC.**
**Case No. 3:12-cv-00850-MRK**

**REQUEST FOR STATUS CONFERENCE AND *IN CAMERA* REVIEW**

# EXHIBIT D

C L I F F O R D
C H A N C E

**CLIFFORD CHANCE LLP**

10 UPPER BANK STREET
LONDON
E14 5JJ

TEL +44 20 7006 1000
FAX +44 20 7006 5555
DX 149120 CANARY WHARF 3

www.cliffordchance.com

**By Email**

**Jones Day**
(sjpearson@JonesDay.com;
nstorrs@JonesDay.com)

Copy to:

**Memery Crystal LLP**
(dhrands@memerycrystal.com;
NScott@memerycrystal.com;
CWhitaker@memerycrystal.com )

Our ref: 70-40463155
Direct Dial: +44 207006 5016
E-mail: william.hooker@clifforchance.com

14 August 2012

Dear Sirs

**Excalibur Ventures LLC (Claimant) -v- (1) Texas Keystone Inc/LLC (2) Gulf Keystone Petroleum Limited (3) Gulf Keystone Petroleum International Limited (4) Gulf Keystone Petroleum (UK) Limited (Respondents)**

1. We refer to Jones Day's letter of 31 July 2012 and to Memery Crystal's letter of 9 August 2012 regarding disclosure. We set out a detailed response to the specific matters raised by Jones Day below and, where appropriate, have indicated additional steps that have been or will be taken in order to address the specific queries that you have raised. In doing so we have addressed the overlapping questions raised by Memery Crystal. We note that Memery Crystal have provided a separate schedule of queries, we will provide a response to that schedule by Friday as requested.

2. We do not consider that the matters you raise have the prejudicial effect that you allege. To a great extent, the documents that you seek are either (i) irrelevant to the matters in dispute in these proceedings; or (ii) privileged. In the circumstances, we respectfully disagree with the protest made by Jones Day to the effect that it cannot "*possibly be suggested that the requests that are being made are tangential and/or without substantive merit, aimed only at distracting your client in its preparation for trial.*" On the contrary, we consider that the Defendants' approach in this respect is motivated, in large part, by an attempt to distract from preparation for trial and to seek to capitalise on an inequality of arms between the parties. We consider this to be self-evident both from the nature and content of the requests advanced and from the characteristically duplicative way in which the requests are pressed, necessitating a

UK-3089155-v1                                                                                                       70-40463155

CLIFFORD CHANCE LLP IS A LIMITED LIABILITY PARTNERSHIP REGISTERED IN ENGLAND AND WALES UNDER NUMBER OC323571. THE FIRM'S REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS IS AT 10 UPPER BANK STREET, LONDON, E14 5JJ. A LIST OF THE NAMES OF THE MEMBERS AND THEIR PROFESSIONAL QUALIFICATIONS IS OPEN TO INSPECTION AT THIS OFFICE. THE FIRM USES THE WORD "PARTNER" TO REFER TO A MEMBER OF CLIFFORD CHANCE LLP OR AN EMPLOYEE OR CONSULTANT WITH EQUIVALENT STANDING AND QUALIFICATIONS. THE FIRM IS REGULATED BY THE SOLICITORS REGULATION AUTHORITY.

CLIFFORD
CHANCE                                                          CLIFFORD CHANCE LLP

### Request 4 – Application of legal professional privilege to communications between Eric and Rex Wempen (paragraph 1(2) of the Order)

<u>Legal Advice Privilege</u>

16. As to paragraph 2.3 of your letter, in our letter of 19 July 2012 we confirmed that we are not asserting legal advice privilege over any communications between Eric and Rex Wempen in these proceedings. The issue of attorney-client privilege in the separate §1782 proceedings in Connecticut is a matter of US law for the US lawyers.

<u>Litigation Privilege</u>

17. We do not agree that the disclosure of communications between Rex and Eric Wempen in the period mid November 2007 to late 2008 has led to a collateral waiver of privilege over all communications between Rex and Eric Wempen which are the subject of litigation privilege. Indeed it is not clear from your letter where you say that the scope of the collateral waiver lies.

18. It is obviously not sufficient for litigation privilege to arise that a document came into existence at a time when litigation was reasonably in prospect; the document must have been created with the dominant purpose of being used in aid of the conduct or progress of contemplated litigation or obtaining legal advice from a lawyer about such litigation.

19. The Claimant reasonably contemplated the possibility of litigation in mid November 2007, in circumstances where (as the disclosed documents demonstrate), the Claimant had concerns that the Defendants would not honour their obligations under the Collaboration Agreement.

20. The Claimant nevertheless took steps to negotiate on an open basis with the Defendants to give effect to the Collaboration Agreement. Such efforts included:

    (i)   telephone discussions between Eric Wempen and Iain Patrick of Gulf Keystone in November 2007;

    (ii)  telephone discussions and emails exchanges between Rex Wempen and Todd Kozel during November 2007;

    (iii) Rex Wempen assisting Gulf Keystone to secure the services of Arrakis to provide seismic survey services in Kurdistan;

**CLIFFORD CHANCE**  
CLIFFORD CHANCE LLP

     (iv)    meetings in London between Rex Wempen and Todd Kozel on 3 and 4 December 2007.

21. On the Defendants' pleaded case, all of the above interactions constituted a commercial attempt to negotiate a farm-in by Excalibur into the Shaikan interest. On the Claimant's pleaded case, these discussions constituted an effort to ensure that the existing obligations under the Collaboration Agreement were given effect by agreement between the parties. The dominant purpose of such materials was the pursuit of a commercial negotiation:

    (a) For instance it is obviously the case that the dominant purpose of the exchanges between Eric and Rex Wempen regarding the draft confidentiality agreement which are referred to in paragraphs 6.17 and 6.20-6.26 of Mr Eric Wempen's First Witness statement (documents BATES 14010 and 14649 of your Schedule 1) was the pursuit of a commercial negotiation on the terms of an agreement that would enable Excalibur to obtain information to provide to potential sponsors.

    (b) Likewise the dominant purpose of the preparations made by Rex and Eric Wempen for the meeting on 3 December 2007 (BATES 15551, 15553, 15563, 15569, referred to in paragraphs 6.27-6.30 of Mr Eric Wempen's First Witness Statement and paragraphs 23.74-23.79 of Mr Rex Wempen's First Witness Statement) was not to prepare material for use in litigation but rather to prepare for a commercial discussion between Mr Wempen and Mr Kozel.

22. Rather than apply a blanket cut-off from mid-November onwards, the Claimant has considered each of the communications between the Wempens to see if the dominant purpose test has been met. Accordingly, the fact that the Claimant has disclosed communications between the Wempens after mid-November does not mean that there has been a wholesale waiver of litigation privilege. On the contrary, given the careful analysis which has been performed, ensuring that only documents which are *not* privileged have been disclosed, it must follow that there has been no waiver of documents which *are* privileged.

23. Furthermore, even if (which is not accepted) the Claimant has somehow inadvertently waived privilege over documents in Schedule 1, it does not follow that it should be taken as having thereby waived privilege in relation to all communications between the Wempens:

    (a) There is no rule that a party who waives privilege in relation to one communication is taken to waive privilege in relation to all. Rather, a party