UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

…………………………………………………………….
In Re:  the Application of                                              :
                                                                              :
TEXAS KEYSTONE INC.,                                        :  3-12-cv-00850-MRK
                                                                              :
        Applicant                                                        :
                                                                              :
Pursuant to 28 U.S.C. § 1782 to issue subpoenas upon   :
UBS AG and Christopher Pinho for the taking of a       :
deposition and the production of documents for use in a  :
foreign proceeding.                                            :  September 28, 2012
………………………………………………………:

## SPECIAL MASTER REPORT AND ORDER NO. 2

### Introductory Statement

By Order entered on September 6, 2012 (dkt. # 42), the Court appointed me as Special

Master to "oversee all aspects of discovery in this case and … resolve all pending and future

discovery disputes."  The pending discovery disputes all arise under Texas Keystone Inc.'s

Motion to Compel Production of Documents, dated June 21, 2012 (dkt. # 18).

I have been provided with an agreed-upon set of documents from the court file to review.

I have also been provided by Excalibur with copies of all documents that it has withheld from

production, for my *in camera* review.  After receiving these materials, I entered Special Master

Report and Order No. 1, dated September 17, 2012 (dkt. # 45), in which I directed the parties to

make certain additional submissions.  Those submissions were timely filed (dkt. #s 46 – 49).

All of the documents that are the subject of the motion were produced by UBS-AG in

response to a subpoena issued pursuant to the Court's Order of April 16, 2012 (dkt. # 4) granting

Texas Keystone's application to take discovery pursuant to pursuant to 28 U.S.C. § 1782 in

connection with litigation between Texas Keystone and Excalibur that is now pending in the

United Kingdom.  The documents consist of emails sent and received by Eric Wempen, a UBS

employee, using his UBS email address.  Those emails have been housed on UBS's server.

Excalibur has objected to UBS producing the emails to Texas Keystone because, Excalibur

claims, Mr. Wempen, who is an attorney, was acting in his capacity as counsel to Excalibur

when he sent and received the emails, and they are protected by the attorney-client privilege

and/or the work product doctrine.  Texas Keystone's Motion to Compel challenges these claims.

I have now reviewed all of the parties' submissions.  I have also reviewed, *in camera,* the

documents that have been withheld from production under claims of attorney-client privilege and

attorney work product.  As discussed below, I conclude that Excalibur's objections based on the

attorney-client privilege should be overruled for two reasons: one, Excalibur has not met its

burden of showing that the communications at issue were between a lawyer and client for the

purpose of obtaining legal advice; and two, the use of the UBS server to send and receive the

emails in question constituted a waiver of any claim of attorney-client privilege that may

otherwise have existed.  I also conclude that this determination does not affect Excalibur's work-

product objection, and that, based on a document-by-document review, that objection should be

overruled as to certain emails and sustained as to others.  Texas Keystone's Motion to Compel

should thus be granted in part and denied in part.

## I.      ATTORNEY-CLIENT PRIVILEGE

### A.      Were the Communications Between a Lawyer and Client for the Purpose of Obtaining Legal Advice?

Together with his brother, Rex Wempen, Eric Wempen is a founder of Excalibur

Ventures, LLC.  First Witness Statement of Eric Putnam Wempen, dated April 13, 2012, in the

matter between Excalibur Ventures LLC and Texas Keystone Inc., et al., pending in the High

Court of Justice, Queen's Bench Division, Commercial Court ("Wempen Statement No. 1") (dkt.

# 40-5), ¶ 1.2.  Rex Wempen holds a majority interest in Excalibur and Eric Wempen holds a

minority interest.  *Id.*  Eric Wempen was admitted to the State Bar of California in 1997 and has

held a California bar practice certificate at least through April 13, 2012.  *Id.,* ¶ 2.1.  Since 2006,

he has been an Executive Director with UBS-AG at its United States headquarters in Stamford,

Connecticut, serving as Equities Counsel and Head of Captial Markets Tax.  *Id.,* ¶¶ 1.1, 2.6.  On

February 19, 2009, he was admitted to practice in Connecticut with a Type C (i.e., Authorized

House Counsel) Juris Number.  Exhibit A to Special Master Report and Order No. 1 (dkt. # 45).[1]

As far as the record reflects, these are Mr. Wempen's only bar admissions.

     As the Court noted in its August 31, 2012 Order (dkt. # 37), Excalibur must show that the

communications which it seeks to withhold are in fact privileged, i.e., that the communications

are between an attorney and client, that they are intended to be confidential and are in fact kept

in confidence, and that they were made for the purpose of obtaining or providing legal advice.

*United States v. Mejia,* 655 F. 3d 126, 132 (2d Cir. 2011).  Excalibur must come forward with

evidence to meet this burden.  *Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP,* No. 03

Civ. 5560 ((RMB)(HBP), 2008 WL 4452134 at * 6 (S.D.N.Y. Oct. 2, 2008), *citing Von Bulow v.*

*Von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015 (1987).

     The record here does not contain evidence sufficient to meet Excalibur's burden.  The

relationship between Eric and Rex Wempen had several facets.  They are brothers, and they are

co-owners of a new business that they were seeking to turn into a profitable venture.  The fact

that Eric Wempen also happened to be a member of the California bar, without more, does not

mean that they intended to communicate on a lawyer to client basis, as opposed to brother to

brother or co-owner to co-owner.  While their communications certainly show a common

purpose of making their fledgling family-owned business a success, I cannot conclude on the

---

[1] I offered the parties an opportunity to be heard on whether these documents may be subject to judicial notice.  No
party raised any objection on that issue.

record before me that Rex Wempen was seeking legal advice on behalf of Excalibur from Eric

Wempen as an attorney, as opposed to seeking business or negotiating guidance from him as a

brother and co-owner.

What is most troubling is the absence of any affirmative statement from either of the

Wempens that they were communicating as lawyer and client for the purpose of providing legal

advice to Excalibur.  The critical nature of such affirmative evidence is apparent from the

Connecticut Superior Court's decision in *Freeman v. Indian Spring Land Co.,* No. FST-CV-05-

4002991-S, 2007 WL 127699 (Conn. Super. Jan. 8, 2007).  In June 2004, the defendant in

*Freeman* asked an individual, Stone, who was trustee of four trusts that owned shares in the

defendant, to serve on a committee that was negotiating with the plaintiff concerning his

continued employment with the defendant.  Stone, a Harvard Law School graduate, had been a

member of the Massachusetts bar prior to his role on the negotiating committee.  The defendant

learned that Stone was no longer admitted to practice in any jurisdiction on August 11, 2004.

The defendant invoked the attorney-client privilege with respect to all of its communications

with Stone while he was on the negotiating committee.  The court found that, prior to learning

that Stone was not admitted to practice in any jurisdiction, the defendant had a reasonable belief

that he was a lawyer, and his communications with the defendant could therefore be privileged.

The basis for the court's conclusion as to the defendant's reasonable belief was the statement of

the defendant's president, in an affidavit, that he contacted Stone to be on the committee because

Stone was a lawyer, he believed the defendant needed someone with legal training and

experience to protect its interests, and his specific reason for asking Stone to be on the committee

was "for the purpose of seeking his legal advice."  2007 WL 127699 at *1.

The record in this case does not contain any similar affidavit or declaration from Rex or Eric Wempen attesting that their communications were intended to be between lawyer and client for the purpose of providing legal advice to Excalibur.  It does, however, as Texas Keystone notes,[2] contain evidence pointing to an opposite conclusion, such as the failure to label email communications between the Wempens housed on a server owned and subject to monitoring by a third party (UBS) as in any way confidential or privileged; the lack of any representation in Eric Wempen's witness statements submitted to the UK court that he was acting as Excalibur's lawyer during the time of his employment by UBS; the fact that Eric Wempen was employed full time as an employee of UBS at the time of the communications in question; and the fact that, when Eric Wempen applied for Connecticut bar membership in 2009, he sought admission only as authorized house counsel for UBS, such that he could not, consistent with Connecticut's requirements for authorized house counsel, provide legal services in Connecticut, the place of his full-time employment, to anyone else.  Connecticut Practice Book § 2-15A(c).[3]

---

[2] Texas Keystone Inc.'s Brief Regarding the Effect of Eric Wempen's Connecticut Law Licensure on Excalibur Ventures, LLC's Attorney-Client Privilege Claims (dkt. # 48) at 5-6.

[3] At pages 6-7 of Excalibur Ventures LLC's Response to the Special Master's Report and Order No. 1 Regarding Privilege Issues and the Unauthorized Practice of Law (dkt. #49), Excalibur cites a number of authorities for the proposition that communications between a purported client and an individual reasonably believed by the client to be a lawyer can be privileged even if the purported lawyer is not authorized to practice.  In none of these authorities, however, did a court uphold a claim of privilege on a record devoid of evidence justifying the purported client's reasonable belief, as is the case here.  In *United States v. Gumbaytay,* 276 F.R.D. 671, 678-79 (M.D. Ala. 2011), the communications at issue were with a paralegal who fielded calls on behalf of public interest organizations such as the ACLU in response to letters inviting persons who might have had particular problems with the defendant, a rental property manager, to call on a confidential basis; the court relied on the nature of the letter, the fact that the paralegal was authorized to practice in other jurisdictions, and the fact that the paralegal was acting under the direction of an attorney and thus within the scope of the privilege regardless of bar admission.  In *Boca Investerings Partnership v. United States,* No. 97-602, 1998 WL 426564 at * 5 n. 4 (D.D.C. June 9, 1998), the party opposing the privilege claimed that the lawyer was not admitted in the state where his office was located; in concluding that the client reasonably perceived that it was dealing with a person authorized to provide legal services, the court relied, among other things, on the lawyer's declaration stating that he served as tax counsel to the client.  In *Thopsey v. Bridgeport Roman Catholic Diocesan Corp.,* No. NNH-CV-10-6009360-S, 2012 WL 695624 at * 4-5 (Conn. Super. Feb. 15, 2012), although the court stated that, for purposes of the privilege, a lawyer can be a person reasonably believed by the client to be authorized to practice "in any state or nation," its actual holding on privilege was that a Catholic diocese's canon lawyer was not the equivalent of a civil law attorney.  In *Gucci America, Inc. v. Guess? Inc.,* No. 09 Civ. 4373 (SAS), 2011 WL 9375 at * 5 (S.D.N.Y. 2011), the record on the client's reasonable belief that it was dealing with a licensed lawyer included, among other things, declarations of six of the client's current and

Based on this record, I conclude that Excalibur has not met its burden of showing that the communications in question were between a lawyer and a client for the purpose of obtaining legal advice.

B.  If There was an Attorney-Client Privilege, was it Waived?

In its Order of August 31, 2012 (dkt. # 37), the Court found "that Excalibur has not articulated facts supporting its claims that the emails [in dispute on the Motion to Compel] are protected by attorney-client privilege."  The fact that the emails were housed on UBS's server and that Excalibur took no steps to segregate or protect them led the court to conclude that the applicable "factors outlined in *In re Asia Global Crossing [Ltd.,* 322 B.R. 247, 258-59 (S.D.N.Y. 2005)] weigh against the claim that the intent to communicate confidentially was objectively reasonable."  Noting, however, Excalibur's claim that it had "not had a chance to fully brief the arguments," the Court also ordered the parties to submit further briefing on the issue of waiver. The parties have now done so.

I take the Court's Order to mean that, based on the record as it existed on August 31, 2012, Excalibur had not satisfied its burden of establishing lack of waiver, but that Excalibur was given an opportunity to supplement the record through supplemental briefing in order to overcome that failure.  I therefore understand the question before me on the waiver issue to be whether Excalibur's supplemental briefing has provided factual information or legal argument not previously before the Court that is sufficient to change the Court's conclusion.  I find that it has not.

---

former executives and its outside counsel stating that they considered the individual in question to be an attorney.  In *Freeman, supra,* the client's president provided a declaration stating his belief that the individual with whom the client had the communications at issue was a lawyer.  2007 WL 127699 at * 1.  And in *United States v. Mullen & Co.,* 776 F. Supp. 620, 621-22 (D. Mass. 1991), while recognizing that the privilege may apply where the client mistakenly believes that he or she is dealing with an attorney, the court declined to rule on whether any documents at issue were privileged because of the lack of a record on a host of factual issues that had to be addressed, and directed that the parties' positions be supported "by affiants who are competent to testify to the matters averred."

In Excalibur Ventures LLC's Memorandum Pursuant to the Court's August 31, 2012 Order (dkt. # 38), at page 1, Excalibur states that "the crux of the issue regarding waiver of the attorney-client privilege is whether Excalibur's intent to communicate in confidence was objectively reasonable in light of UBS's [employee email] policy." Excalibur goes on to say that its intent "is made clear by a correct reading of the UBS Email Policy and a measured consideration of the law and real world circumstances." *Id.* at 2. The difficulty with Excalibur's position is that it has not submitted any evidence of an intent to communicate confidentially in the first place. All that it offers in response to the opportunity provided to it in the Court's August 31 Order to supplement its briefing on the waiver issue is the UBS email policy that was already before the Court; legal argument; and speculation about employee use of employers' email servers. This does not satisfy its burden.

As to the terms of UBS's email policy, Excalibur's contention that "a finding of waiver here would do nothing to further the stated purpose of" the UBS email policy (dkt. # 38 at 7), even if relevant, is unpersuasive. One of the policy's stated purposes is to "promot[e] employee productivity" (dkt. # 18-8 at UBS-AG 3934). I take this to mean that, by asserting its ownership over and right to monitor employee emails, UBS is pursing a legitimate business interest in making employees more productive by discouraging them from using UBS's servers for non-UBS emails. Eric Wempen's extensive use of his UBS email account to conduct Excalibur business runs counter to that legitimate business interest.

As to Excalibur's legal argument, I do not find the authorities on which it relies persuasive. For example, in *United States v. Warshak,* 631 F.3d 266, 283-87 (6th Cir. 2010), the court was not addressing the attorney-client privilege, but rather the expectation of privacy under the Fourth Amendment in connection with a warrantless search. The party from whom the

Government obtained Warshak's emails was not his employer, but rather NuVox, his internet service provider.  *Id.* at 274.  Excalibur offers no justification for according an employee's use of the internet account provided to him by his employer for purposes of conducting the employer's business pursuant to a policy making it clear that the employer owns and has a right to monitor the employee's emails the same expectation of privacy as an individual's emails sent and received on a personal email account through the individual's own internet service provider.

UBS's email policy makes clear that personal use of company email accounts is discouraged, that personal use is not private, that UBS owns all employee emails, and that UBS has the right to monitor, access copy and disclose all employee emails.  The more relevant and persuasive authorities are therefore cases such as *In re Reserve Fund Secs. & Derivative Litig.,* 275 F.R.D. 154 (S.D.N.Y. 2011) (rejecting employee's claim of reasonable expectation of privacy in emails sent over employer's system in light of terms of employer's policy regarding employee email use) and *Goldstein v. Colborne Acquisition Co., LLC,* No. 10 C 6861, 2012 WL 1969369 (N.D. Ill. June 1, 2012) (same).

Excalibur's generalized speculation about employee use of employer email servers (dkt. # 38 at 8) is of little assistance in light of the fact-specific nature of the inquiry.  *In re Reserve Fund* at 160.  And while Excalibur may be correct that it would be unreasonable to expect it to have caused UBS to remove the emails in question from its server, nothing would have prevented Eric Wempen from designating his emails on Excalibur matters as "Confidential" or "Privileged" and instructing Rex Wempen to do the same, or from communicating through his Excalibur email account, ericpw@excaliburvc.com.  Second Witness Statement of Eric Putnam Wempen, dated July 19, 2012 (dkt. # 40-6), at ¶ 2.7.  It appears that Eric Wempen communicated

using his UBS account rather than his Excalibur account as a matter of personal convenience, because his "UBS BlackBerry synched automatically to the [UBS] server." *Id.,* ¶ 2.2.

In sum, I find no factual information or legal argument in Excalibur's supplemental briefing not previously before the Court that would warrant changing the Court's conclusion that Excalibur had not satisfied its burden of establishing lack of waiver.

## II.   WORK PRODUCT

Excalibur also claims that the emails in question are protected by the work product doctrine and therefore properly withheld regardless of whether they may be withheld based on the attorney-client privilege.  As discussed below, I conclude that Excalibur may assert work product protection as to certain documents but not others, as set forth on the attached listing of documents contained in Excalibur's privilege log.

The analysis with respect to work product is different from that governing privilege in significant respects.  According to Fed. R. Civ. P. 26(b)(3), which is applicable here pursuant to 28 U.S.C. § 1782(a), the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent." Connecticut law is similar.  *OneBeacon Prof'l Partners, Inc. v. Ironshore Holdings (U.S.), Inc.*, No. HHD-X04-CV-08-5019642-S, 2009 WL 415623 at * 2 (Conn. Super. Jan. 27, 2009), *quoting In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982).  Thus, documents can be protected as work product even though they do not constitute communications between an attorney and a client.

Moreover, waiver requirements with respect to work product are relaxed in comparison with the privilege.  It is not every disclosure to a person outside of the attorney-client

relationship that will result in a work product waiver; rather, waiver of work product materials will be found "only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." *OneBeacon* at * 4, *quoting Merrill Lynch & Co., Inc. v. Allegheny Energy Inc*., 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004).

The documents on Excalibur's privilege log contain materials prepared by or for a party or its representative.  The fact that the emails were sent through UBS's servers did not substantially increase the opportunity for Texas Keystone to obtain them, since Texas Keystone was required to proceed via a subpoena issued in this proceeding that gave Excalibur the opportunity to assert its objections.  Accordingly, unlike the situation with respect to attorney-client privilege – where I find that none of the communications are protected for reasons unrelated to their individual contents – in the case of Excalibur's work product claim a document-by-document review is necessary.

There are two waiver issues that arise in such a review.  One is waiver by selective production of related information.  The other is waiver by the production of the identical document in the UK proceedings.  With respect to the former, Excalibur does not appear to contest the principle that work product protection can be waived by selective production of related information; its principal argument, rather, was that Texas Keystone has failed to substantiate its claim of selective production, which cannot be assessed without a review of the relevant documents.  Excalibur Ventures LLC's Memorandum in Opposition to Texas Keystone, Inc.'s Motion to Compel Production of Documents (dkt. # 27) at 8-10.  I have now conducted such an *in camera* review, comparing the documents on Excalibur's privilege log with the documents provided by Excalibur in support of its claims of waiver by selective production (dkt. # 40-4).  The results of that review are set forth in the attached listing.

With respect to waiver by production of the identical document in the UK proceedings, Excalibur's briefing has taken the position that it had "never disclosed the communications reflected on the Privilege Log" (dkt. # 27 at 8) and that it "has consistently withheld the same communications in both proceedings" (dkt. # 38 at 5).  In my *in camera* review, however, I identified approximately fifty documents withheld by Excalibur that consist of or contain documents that have already been produced.  In response to my inquiry of the parties, in Special Master Report and Order No. 1 (dkt. # 45), as to the effect of prior production of identical documents on Excalibur's claim of work product, Excalibur offered two responses.  First, it contended that this issue should not be resolved here, but rather by the London High Court (dkt. # 47 at 2).  Second, it requested "a reasonable amount of time" to determine whether there has been an inadvertent disclosure and whether it is precluded from asserting that the disclosed documents should be protected.  *Id*. at 2-3.

With respect to the claim that this issue should be decided by the London High Court, Excalibur is asking me to revisit the Court's order of July 19, 2012 (dkt. # 28) that the District of Connecticut is the appropriate forum for resolution of the issues raised by Texas Keystone's motion to compel.  I have no authority to do so, and decline Excalibur's invitation.

With respect to the request for more time, I construe this as a motion for extension of time.  Excalibur has not complied with D. Conn. L. Civ. R. 7(b)3, and its motion could be denied for that reason alone.  More fundamentally, Excalibur's request is unreasonable.  The UK trial is imminent, scheduled to begin on October 8, 2012.  The volume of documents now claimed by Excalibur to be protected from disclosure that it previously produced is substantial – nearly a quarter of the documents on its privilege log.  Excalibur has had Texas Keystone's submission of

11

documents containing previously produced documents (dkt. # 40-4) since September 5, 2012,[4] and if it failed to recognize at that time that it had already produced such a large number of documents on its privilege log I can only attribute that to inattention.  If Excalibur did recognize its prior production but did nothing to investigate or to remedy the situation, it similarly can only blame itself for the time pressures about which it complains.  Accordingly, for the reasons stated in Texas Keystone, Inc.'s Brief Regarding Excalibur Ventures, LLC's Waiver of the Attorney-Client Privilege and Work Product Doctrine Through Voluntary Disclosure, filed on September 21, 2012 (dkt. # 46) I conclude that Excalibur has waived any claim to work product protection for documents previously produced.

As a final note on work product, I have determined that Excalibur first anticipated litigation on November 23, 2007, based on Wempen Statement No. 1 (dkt. # 40-5), ¶ 6.23. Documents created prior to November 23, 2007 are thus not entitled to work product protection.

### Conclusion

In summary:

1.       Excalibur's claim of attorney-client privilege should be denied with respect to all of the documents on Excalibur's privilege log because:

(a)       Excalibur has not met its burden of showing that the communications it has withheld on the basis of attorney-client privilege were communications between a lawyer and a client for purposes of obtaining or providing legal advice; and

(b)       Excalibur has not met its burden of showing that it did not waive the privilege by virtue of Eric Wempen and Rex Wempen communicating via emails housed on a server maintained by UBS, which retained ownership of and the right to monitor all such emails, and

---

[4] In addition, Texas Keystone's Request for Status Conference and *In Camera* Review, filed on August 17, 2012 (dkt. # 29) contained a document at page 24 of Exhibit C (dkt. # 29-4) that is identical to a document (page UBS-AG 3752) that is contained within document 186 on Excalibur's privilege log.

which explicitly warned its employees that they had no privacy rights to their emails sent and received through their employee accounts.

      2.     There has been no blanket waiver of Excalibur's claim of work product protection; the grounds for rejecting Excalibur's privilege claim do not apply to its work product claim.

      3.     Based on a document-by-document review, as set forth on the attached list, certain of Excalibur's claims of work product protection are sustained and some are overruled. The grounds for overruling various of Excalibur's claims include waiver by selective production of similar information and waiver by prior production of the identical documents.

/s/  Frank J. Silvestri, Jr.
Frank J. Silvestri, Jr.  ct05367
SPECIAL MASTER
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
P.O. Box 5116
Westport, CT  06881
Tel. No.:  203-222-0885
Fax. No.:  203-226-8025
E-Mail:  fsilvestri@levettrockwood.com

| Dkt.No. | Ruling on Work Product Objections |
|---|---|
| 1 | Overruled: pre-11/23/07; waiver by prior production of identical document (dkt. # 40-4, p. 5) |
| 2 | Overruled: pre-11/23/07; as to email no. 1, issue of who should send email waived by selective production (dkt. #40-4, p. 125, discussing who should send email); as to email no. 2, waiver by prior production of identical document (dkt. # 40-4, p. 5) |
| 3 | Overruled: pre-11/23/07; as to email no. 1, not in anticipation of litigation; as to email no. 2, waiver by prior production of identical document (dkt. # 40-4, p. 5) |
| 4 | Overruled: pre-11/23/07; as to email nos. 1, and 2, not in anticipation of litigation; as to email no. 3, waiver by prior production of identical document (dkt. # 40-4, p. 5) |
| 5 | Overruled: pre-11/23/07; as to email nos. 1, 2 and 3, not in anticipation of litigation; as to email no. 4, waiver by prior production of identical document (dkt. # 40-4, p. 5) |
| 6 | N/A (work product not claimed) |
| 7 | Overruled: pre-11/23/07; as to all emails in chain, not in anticipation of litigation |
| 8 | Sustained |
| 9 | Sustained as to incorporation of document 8 and as to third by fifth paragraphs of UBS-AG 1856 and first paragraph of UBS-AG 1857; otherwise overruled due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.23-6.26; dkt. #40-4, pp. 9-12, 21-24, 27-30, 41-42, 46) |
| 10 | Sustained as to incorporation of document 8 and protected portion of document 9; otherwise overruled as not protected (email re making a phone call) and due to waiver by selective production of related information (as above re document 9) |
| 11 | Sustained as to incorporation of document 8 and protected portion of document 9; otherwise overruled as not protected (emails re making a phone call) and due to waiver by selective production of related information (as above re document 9) |
| 12 | Sustained as to incorporation of document 8 and protected portion of document 9; otherwise overruled as not protected (email re making a phone call) and due to waiver by selective production of related information (as above re document 9) |
| 13 | Sustained as to incorporation of document 8 and protected portion of document 9; otherwise overruled due to waiver by selective production of related information (as above re document 9) |
| 14 | Sustained as to incorporation of document 8 and protected portion of document 9; otherwise overruled due to waiver by selective production of related information (as above re document 9) |
| 15 | Overruled; waiver by prior production of identical document (dkt. # 40-4, pp. 23-24) |
| 16 | Overruled; first email not protected (unrelated communication); remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 23-24) |
| 17 | Overruled; first email due to waiver by selective production of related information (as above re document 9); second email not protected (unrelated communication); remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 23-24) |
| 18 | Overruled; first email due to waiver by selective production of related information (as above re document 9); remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 23-24) |

| 19 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 30-33) |
| 20 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 29-33) |
| 21 | N/A (work product not claimed) |
| 22 | N/A (work product not claimed) |
| 23 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 29-33) |
| 24 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 29-33) |
| 25 | N/A (work product not claimed) |
| 26 | N/A (work product not claimed) |
| 27 | N/A (work product not claimed) |
| 28 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 28-33) |
| 29 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 28-33) |
| 30 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 27-33) |
| 31 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 27-33) |
| 32 | Overruled due to waiver by production of identical document (dkt. # 40-4, pp. 27-33) |
| 33 | Overruled; first email due to waiver by selective production of related information (dkt. # 40-4, pp. 27-33); remainder due to waiver by production of identical document (dkt. # 40-4, pp. 27-33) |
| 34 | N/A (work product not claimed) |
| 35 | N/A (work product not claimed) |
| 36 | N/A (work product not claimed) |
| 37 | N/A (work product not claimed) |
| 38 | Sustained as to first email on p. UBS-AG 1973; overruled as to remaining emails on that page and first email on page UBS-AG 1974 since they relate only to logistical matters; overruled as to all remaining emails since they appear to be related to a different matter |
| 39 | Sustained |
| 40 | Overruled as to first email on p. UBS-AG 1979 since it relates only to logistical matters; sustained as to the remainder |
| 41 | Overruled as to second email on p. UBS-AG 1982 since it relates only to logistical matters; sustained as to the remainder |
| 42 | Overruled as to first and third emails on p. UBS-AG 1986 since they relate only to logistical matters; sustained as to the remainder |
| 43 | Overruled as to first, second and fourth emails on p. UBS-AG 1990 since they relate only to logistical matters; sustained as to the remainder |
| 44 | Overruled as to first email on p. UBS-AG 1994 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80); overruled as to second and fourth emails on p. UBS-AG 1994 since they relate only to logistical matters; sustained as to the remainder |
| 45 | Overruled as to first email on p. UBS-AG 1998 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80); overruled as to second and fourth emails on p. UBS-AG 1998 since they relate only to logistical matters; sustained as to the remainder |
| 46 | Overruled as to first and second emails on p. UBS-AG 2002 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80); overruled as to third email on p. UBS-AG 2002 since it relates |

| | |
|---|---|
| | only to logistical matters; sustained as to the fourth email on p. ABS-AG-2002; overruled as to the first email on p. UBS-AG 2003 since it relates only to logistical matters; sustained as to the remainder |
| 47 | Overruled as to first and second emails on p. UBS-AG 2007 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80); overruled as to third email on P. UBS-AG 2007 since it relates only to logistical matters; sustained as to the fourth email on p. UBS-AG 2007; overruled as to the first email on p. UBS-AG 2008 since it relates only to logistical matters; sustained as to the remainder |
| 48 | Overruled as to the email on p. UBS-AG 2020 and the second email on p. UBS-AG 2021 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80); overruled as to the remainder since related to financing from UBS, not litigation |
| 49 | Overruled: waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 50 | Overruled as to the first email on p. UBS-AG 2041 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 51 | Overruled as to the first and second emails on p. UBS-AG 2045 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 52 | Sustained as to the first email (p. UBS-AG 2049 through the top of p. UBS-AG 2053; overruled as to the remaining two emails on p. UBS-AG 2053 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 53 | Sustained as to the first two emails (p. UBS-AG 2058 through the bottom of p. UBS-AG 2062; overruled as to the next two emails (bottom of p. UBS-AG 2062 through the middle of p. UBS-AG 2063 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 54 | Sustained as to the first three emails (p. UBS-AG 2067 through the bottom of p. UBS-AG 2071; overruled as to the first two emails on p. UBS-AG 2072 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 55 | Sustained as to the first four emails (p. UBS-AG 2076 through the middle of p. UBS-AG 2081; overruled as to the next two emails on p. UBS-AG 2081 due to waiver by selective production of related information (Wempen Statement No. 1, ¶¶ 6.28 – 6.29; dkt. # 40-4, pp. 76-80; dkt. # 40-4, pp. 97-99); overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 97-99) |
| 56 | Sustained as to the first email on p. UBS-AG 2116; overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 84-88). |
| 57 | Sustained as to the first two emails on p. UBS-AG 2122; overruled as to the remainder |

| | |
|---|---|
| | due to waiver by prior production of identical document (dkt. # 40-4, pp. 84-88). |
| 58 | Overruled as to the first email on p. UBS-AG 2128 since it relates only to logistical matters; overruled as to the second and third emails on p. UBS-AG 2128 since they appear to be related to a different matter; overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 83-88). |
| 59 | Sustained as to the first two emails on p. UBS-AG 2135; overruled as to the third email on p. UBS-AG 2135 since it relates only to logistical matters; overruled as to the fourth email on p. UBS-AG 2135 and the first email on p. UBS-AG 2136 since they appear to be related to a different matter; overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 83-88). |
| 60 | Sustained as to the first two emails on p. UBS-AG 2143; overruled as to the remainder due to waiver by prior production of identical document (dkt. # 40-4, pp. 84-88). |
| 61 | Sustained |
| 62 | Overruled as to the first email on p. UBS-AG 2150 since it contains nothing of substance; sustained as to the remainder |
| 63 | Overruled as to the first email on p. UBS-AG 2151 since it appears to relate to a different matter; overruled as to the second email on p. UBS-AG 2151 since it relates contains nothing of substance; sustained as to the remainder |
| 64 | Sustained |
| 65 | Overruled as to the first two emails on p. UBS-AG 2154 since they appear to relate to a different matter; overruled as to the third email on p. UBS-AG 2154 since it contains nothing of substance; sustained as to the remainder |
| 66 | Overruled as to the second email on p. UBS-AG 2156 since it contains nothing of substance; otherwise sustained |
| 67 | Overruled as to the first email on p. UBS-AG 2157 since it contains nothing of substance; otherwise sustained |
| 68 | Sustained |
| 69 | Overruled as to the first email on p. UBS-AG 2163 due to waiver by selective production of related information (dkt. # 40-4, pp. 76-80); overruled as to the second email on p. UBS-AG 2163 since it contains nothing of substance; overruled as to the remainder since the emails are all with third parties |
| 70 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 104-05) |
| 71 | Overruled as to the first email on p. UBS-AG 2170 due to waiver by selective production of related information (dkt. # 40-4, p, 104); overruled as to the remainder due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 104-05) |
| 72 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 104-05) |
| 73 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 104-05) |
| 74 | N/A (work product not claimed) |
| 75 | N/A (work product not claimed) |
| 76 | N/A (work product not claimed) |
| 77 | N/A (work product not claimed) |
| 78 | Overruled as to the two emails on p. UBS-AG 2190 due to waiver by selective production of related information (dkt. # 40-4, pp. 103-08); overruled as to the |

| | remainder due to waiver by prior production of identical documents (dkt. # 40-4, pp. 106-07) |
|---|---|
| 79 | Overruled as to the first email on p. UBS-AG 2193 since it relates only to logistical matters; overruled as to the next two emails due to waiver by selective production of related information (dkt. # 40-4, pp. 103-08); overruled as to the remainder due to waiver by prior production of identical documents (dkt. # 40-4, pp. 106-07) |
| 80 | Overruled due to waiver by selective production of related information (Wempen Statement No. 1, ¶ 6.32) |
| 81 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, p. 108) |
| 82 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, p. 108) |
| 83 | Overruled as to the first email on p. UBS-AG 2200 since unrelated to litigation issues and due to waiver by selective production of related information (dkt. # 40-4, pp. 103-08); as to the remainder, overruled due to waiver by prior production of the identical documents (dkt. # 40-4, p. 108) |
| 84 | Overruled; documents relate to representation for potential negotiation, not litigation; also overruled due to waiver by selective production of related information (Wempen Statement No. 1, ¶ 6.32-6.33) |
| 85 | Overruled as to the first two emails on p. UBS-AG 2203. which relate to transactional, not litigation issues; overruled as to the remainder, since the emails are with a third party |
| 86 | Sustained as to the first email on p. UBS-AG 2207; overruled as to the remainder, which is a communication with Gulf Keystone |
| 87 | Sustained as to the first email on p. UBS-AG 2209 and the "Scope of Work" paragraph on p. UBS-AG 2211; overruled as to the remainder, which relates only to the potential terms of an engagement |
| 88 | Sustained as to the first email on p. UBS-AG 2215; overruled as to the remainder, which is a communication with Gulf Keystone |
| 89 | Sustained |
| 90 | Sustained |
| 91 | Sustained as to the first email on p. UBS-AG 2223; overruled as to the second email since it relates only to logistical matters; overruled as to the third email since it is a communication with Gulf Keystone |
| 92 | Overruled; the emails contain nothing of substance |
| 93 | Sustained |
| 94 | Sustained |
| 95 | Overruled as to the first email (non-substantive); otherwise sustained |
| 96 | Overruled as to the first email (non-substantive); otherwise sustained |
| 97 | Overruled as to the first email (non-substantive); otherwise sustained |
| 98 | Overruled as to the second email (non-substantive); otherwise sustained |
| 99 | Overruled as to the first (non-related) and third (non-substantive) emails on p. UBS-AG 2248; otherwise sustained |
| 100 | Overruled as to the first and second (non-related) and fourth (non-substantive) emails on p. UBS-AG 2250; otherwise sustained |
| 101 | Overruled as to the first and second (non-related) and fourth (non-substantive) emails |

| | |
|---|---|
| | on p. UBS-AG 2252; otherwise sustained |
| 102 | Overruled due to waiver by selective production of related information (dkt. # 40-4, pp. 110-11, 130) |
| 103 | Overruled due to waiver by selective production of related information (dkt. # 40-4, pp. 110-11, 130) |
| 104 | Sustained |
| 105 | Overruled due to waiver by selective production of related information (dkt. # 40-4, pp. 109-12) |
| 106 | Overruled due to waiver by selective production of related information (dkt. # 40-4, pp. 109-12) |
| 107 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 109-11) |
| 108 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 109-12) |
| 109 | Overruled due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 109-12) |
| 110 | Overruled as to the first two emails on p. UBS-AG 2276 (non-substantive); overruled as to the remainder of p. UBS-AG 2276 and p. UBS-AG 2277 due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 109-11); overruled as to p. UBS-AG 2278 due to selective production of related information (dkt. # 40-4, pp. 111-12) |
| 111 | Overruled as to the first three emails on p. UBS-AG 2279 (non-substantive); overruled as to the remainder of p. UBS-AG 2279 and pp. UBS-AG 2280-81 due to waiver by prior production of the identical documents (dkt. # 40-4, pp. 109-11); overruled as to p. UBS-AG 2282 due to selective production of related information (dkt. # 40-4, pp. 111-12) |
| 112 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12) |
| 113 | Overruled; contrary to privilege log description, the document does not address potential litigation but rather tax treatment of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 114 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 115 | Overruled due to selective production of related information (dkt. # 40-4, pp. 102-12, 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 116 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 117 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 118 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 119 | Overruled due to selective production of related information (dkt. # 40-4, pp. 109-12, |

| | |
|---|---|
| | 119-21); document also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone |
| 120 | Overruled as to first email on p. UBS-AG 2393 due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21); email also does not address potential litigation but rather terms of what was believed to be a settlement between Excalibur and Gulf Keystone; overruled as to second email on p, UBS-AG 2393 (non-substantive); overruled as to the remainder, which is a communication with Gulf Keystone |
| 121 | Overruled as to the first email as non-substantive; overruled as to the second email as addressing what was believed to be a settlement between Excalibur and Gulf Keystone |
| 122 | Overruled as to the first and second emails as non-substantive; overruled as to the third email as addressing what was believed to be a settlement between Excalibur and Gulf Keystone |
| 123 | Overruled as to the first email as unrelated; overruled as to the second and third emails as non-substantive; overruled as to the fourth email as addressing what was believed to be a settlement between Excalibur and Gulf Keystone |
| 124 | Overruled as to the first email on p. UBS-AG 2401 due to selective production of related information (dkt. # 40-4, p. 130) and as addressing what was believed to be a settlement between Excalibur and Gulf Keystone; overruled as to the second and third emails on p. UBS-AG 2401 as non-substantive; overruled as to the fourth email on p. UBS-AG 2401 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone; overruled as to the remainder, which are communications between Excalibur's counsel and Gulf Keystone's counsel and principal |
| 125 | Overruled as to the first and second emails on p. UBS-AG 2404 as non-substantive; overruled as to the third email on p. UBS-AG 2404 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone; overruled as to the remainder, which are communications between Excalibur's counsel and Gulf Keystone's counsel and principal |
| 126 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21) |
| 127 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21) |
| 128 | Overruled as to the first email as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21) |
| 129 | Overruled as to the first three emails on p. UBS-AG 2822 as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-12, 119-21) |
| 130 | Overruled as to the first four emails on p. UBS-AG 2828 as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related |

| | |
|---|---|
| | information (dkt. # 40-4, pp. 109-12, 119-21) |
| 131 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, p. 112) |
| 132 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 133 | Overruled as to the first two emails (non-substantive) and as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 134 | Overruled as to the first email on p. UBS-AG 2862 and the last email on p. UBS-AG 2863 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21); overruled as to the remainder as non-substantive |
| 135 | Overruled as to the two emails on p. UBS-AG 2864 and the last email on p. UBS-AG 2865 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21); overruled as to the remainder as non-substantive |
| 136 | Overruled as to the three emails on p. UBS-AG 2867 (carrying over to the top of p. UBS-AG 2868) and the last email on p. UBS-AG 2868 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21); overruled as to the remainder as non-substantive |
| 137 | Overruled as to the first email on p. UBS-AG 2870 and the two emails in the middle of p. UBS-AG 2871 as non-substantive; overruled as to the second, third and fourth emails on p. UBS-AG 2870 (carrying over to the top of p. UBS-AG 2871) and the last email on p. UBS-AG 2871 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 138 | Overruled as to the first email on p. UBS-AG 2885 and the two emails in the middle of p. UBS-AG 2887 as non-substantive; overruled as to the second, third and fourth emails on p. UBS-AG 2885 (carrying over to the top of p. UBS-AG 2887) and the last email on p. UBS-AG 2887 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 139 | Overruled as to the first email on p. UBS-AG 2901 as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 140 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 141 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |

| | |
|---|---|
| 142 | Overruled as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 143 | Overruled as to the first two emails as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 144 | Overruled as to the first three emails as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 145 | Overruled as to the first four emails as non-substantive; overruled as to the remainder as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21) |
| 146 | Sustained as to the 02/07/08 billing entry on p. UBS-AG 2954; otherwise overruled as not relating to anticipated litigation |
| 147 | Overruled as relating only to logistics and, as to the last email on p. UBS-AG 2956 through p. UBS-AG 2958, the email communications are with Gulf Keystone's counsel |
| 148 | Overruled as relating only to logistics and, as to the second email on p. UBS-AG 2960 through p. UBS-AG 2962, the email communications are with Gulf Keystone's counsel |
| 149 | Overruled as relating only to logistics and, as to the last email on p. UBS-AG 2964 through p. UBS-AG 2966, the email communications are with Gulf Keystone's counsel |
| 150 | Overruled as relating only to logistics and, as to the emails on pp. UBS-AG 2987 through UBS-AG 2989, the email communications are with Gulf Keystone's counsel |
| 151 | Overruled as relating only to logistics and, as to the emails on pp. UBS-AG 2991 through UBS-AG 2994, the email communications are with Gulf Keystone's counsel |
| 152 | Overruled as to the first email on p. UBS-AG 2995 as addressing what was believed to be a settlement between Excalibur and Gulf Keystone and due to selective production of related information (dkt. # 40-4, pp. 109-112, 119-21); as to the remainder, overruled as relating only to logistics and, as to the last email beginning on p. UBS-AG 2996 through p. UBS-AG 2999, the email communications are with Gulf Keystone's counsel |
| 153 | N/A (work product not claimed) |
| 154 | N/A (work product not claimed) |
| 155 | Sustained as to the first email on p. UBS-AG 3020 (R. Wempen to E. Wempen); otherwise overruled, as the email communication is with Gulf Keystone |
| 156 | Overruled as to the three emails on p. UBS-AG 3070 (including the top of p. UBS-AG 3071) as not relating to litigation; sustained as to the email in the middle of p. 3071; overruled as to the remainder, which is a Gulf Keystone press release |
| 157 | Sustained as to the first email on p. UBS-AG 3074; overruled as to the second, third and fourth emails on p. UBS-AG 3074 (including the top of p. UBS-AG 3075) as not relating to litigation; sustained as to the second email on p. UBS-AG 3075; overruled |

|  | as to the remainder, which is a Gulf Keystone press release |
|---|---|
| 158 | Sustained |
| 159 | Overruled as to the first two emails on p. UBS-AG 3080 as non-substantive; sustained as to the third email on p. UBS-AG 3080 and the attachment |
| 160 | Sustained |
| 161 | Sustained |
| 162 | Sustained |
| 163 | Overruled as to the first email on p. UBS-AG 3095 (non-substantive); sustained as to the remainder |
| 164 | Overruled as to the first two emails on p. UBS-AG 3098 (non-substantive); sustained as to the remainder |
| 165 | Sustained as to the two billing entries for 05/03/08 on p. UBS-AG 3115; otherwise overruled as not relating to anticipated litigation |
| 166 | Overruled as to the first email on p. UBS-AG 3116 (non-substantive);  sustained as to the second email on p. UBS-AG 3116; remainder overruled (communication from counsel for Gulf Keystone) |
| 167 | Overruled as to the first email on p. UBS-AG 3131 (non-substantive);  sustained as to the second email on p. UBS-AG 3131; remainder overruled (communication from counsel for Gulf Keystone) |
| 168 | Sustained as to the email on p. UBS-AG 3146 (including carryover on p. UBS-AG 3147); overruled on the first full email on p. UBS-AG 3147 (non-substantive; no text); sustained as to the second full email on p. UBS-AG 3147; remainder overruled (communication from counsel for Gulf Keystone) |
| 169 | Sustained as to the two billing entries for 05/03/08 on p. UBS-AG 3155; otherwise overruled as not relating to anticipated litigation |
| 170 | Sustained as to the two billing entries for 05/03/08 on p. UBS-AG 3162; otherwise overruled as non-substantive (p. UBS-AG 3156) and not relating to anticipated litigation |
| 171 | Sustained as to the first email; remainder overruled; the second email is non-substantive; the third and fourth are communications with Gulf Keystone |
| 172 | Overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 173 | N/A ((work product not claimed) |
| 174 | Overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 175 | Overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 176 | Overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 177 | Sustained as to the first two emails; remainder overruled; the third email is non-substantive; the fourth and fifth are communications with Gulf Keystone |
| 178 | Sustained as to the first three emails; remainder overruled; the fourth email is non-substantive; the fifth and sixth are communications with Gulf Keystone |
| 179 | Sustained as to the first four emails; remainder overruled; the fifth email is non-substantive; the sixth and seventh are communications with Gulf Keystone |
| 180 | Overruled; the first line of text on p. UBS-AG 3397 is non-substantive; as to the |

| | |
|---|---|
| | remainder of pp. UBS-AG 3397-401, waiver by prior production of identical document (dkt. # 40-4, pp. 135-39); as to pp. UBS-AG 3402-528, overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 181 | Overruled; as to pp. UBS-AG 3567-71, waiver by prior production of identical document (dkt. # 40-4, pp. 134-39); as to pp. UBS-AG 3572-3698, overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 182 | Overruled due to waiver by prior production of identical document (dkt. # 40-4, pp. 134-39) |
| 183 | Overruled due to waiver by prior production of identical document (dkt. # 40-4, pp. 134-39) |
| 184 | Overruled as to pp. UBS-AG 3711-19 due to waiver by selective production of related and/or identical information (dkt. # 40-4, pp. 134-39); overruled as to pp. UBS-AG 3720-32 as predating Excalibur's anticipation of litigation (Wempen Statement No. 1 at ¶ 6.23); overruled as to the second email on p. UBS-AG 3725 through the end of the document as being communications with Gulf Keystone |
| 185 | Overruled due to waiver by prior production of identical document (dkt. # 40-4, pp. 120-21) |
| 186 | Overruled as to p. UBS-AG 3751 as not related to litigation and waiver due to selective production of related information (dkt. # 29-4, pp. 6, 24); overruled as to p. UBS-AG 3752 due to waiver by prior production of identical document (dkt. # 29-4, p. 24); overruled as to the emails on p. UBS-AG 3753 as non-substantive; overruled as to remainder, which are communications with counsel for Gulf Keystone |
| 187 | Overruled as not related to litigation and waiver due to selective production of related information (dkt. # 29-4, pp. 6, 24) |
| 188 | Sustained as to that portion of the email on p. UBS-AG 3834 above the asterisks; remainder overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 189 | Overruled as not related to litigation (intended for communication to "the decision making corporate officer in both Texas and Gulf Keystone" (p. UBS-AG 3837)) |
| 190 | Overruled as related to legislative lobbying, not litigation |
| 191 | Overruled as related to logistics and legislative lobbying, not litigation |
| 192 | Overruled as to pp. UBS-AG 3851-52 and the first email on p. UBS-AG 3853 as related to legislative lobbying, not litigation; overruled as to the remainder as unrelated |
| 193 | Overruled as to the emails on pp. UBS-AG 3859-60 carrying over to p. UBS-AG 3861 and the next email as related to legislative lobbying, not litigation; overruled as to the remainder as unrelated |
| 194 | Sustained |
| 195 | Sustained |
| 196 | N/A (work product not claimed) |
| 197 | N/A (work product not claimed) |
| 198 | Overruled as relating to attempts to seek funding from third parties and due to waiver by selective production of related information (dkt. # 40-4, pp. 134-39) |
| 199 | Overruled as related to legislative lobbying, not litigation |

| 200 | N/A (work product not claimed) |
|---|---|
| 201 | N/A (work product not claimed) |
| 202 | N/A (work product not claimed) |
| 203 | Sustained as to the first email on p. UBS-AG 4372; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 204 | Overruled as to the first email on p. UBS-AG 4378 as non-substantive; sustained as to the second email on p. UBS-AG 4378; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 205 | Overruled as to the first two emails on p. UBS-AG 4384 as non-substantive; sustained as to the third email on p. UBS-AG 4384; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 206 | Sustained as to the two emails on p. UBS-AG 4390; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 207 | Sustained as to the three emails on p. UBS-AG 4396, including carryover on p. UBS-AG 4397; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 208 | Sustained as to the four emails on p. UBS-AG 4403, including carryover on p. UBS-AG 4404; overruled as to the remainder since not claimed to be work product (same as privilege log document 202) |
| 209 | Overruled as to the first three emails on p. UBS-AG 4419 as non-substantive and related to logistics; overruled as to the remainder as unrelated |
| 210 | Overruled as related to logistics |
| 211 | Overruled as related to logistics |
| 212 | Sustained as to the first email on p. UBS-AG 4426; otherwise overruled as unrelated to litigation |
| 213 | Sustained as to the first two emails on p. UBS-AG 4428; otherwise overruled as unrelated to litigation |
| 214 | Sustained as to the second email on p. UBS-AG 4430; otherwise overruled as unrelated to litigation |
| 215 | Sustained as to the third email on p. UBS-AG 4432; otherwise overruled as unrelated to litigation |

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2012, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/  Frank J. Silvestri, Jr.
Frank J. Silvestri, Jr.  ct05367

233961